Linda G. PHILLIPS, M.D. and Patrick Adegboyega, M.D., Appellants

v.

Debbie DAFONTE, Appellee.

No. 14–05–00522–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 7, 2006.

---

George W. Vie III, Galveston, for appellants.

Michael J. Stanley, Houston, Stretch R. Lewis Jr., Galveston, and Paul A. Pilibosian, Wallace T Ward III, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellants, Linda G. Phillips, M.D., and Patrick Adegboyega, M.D., appeal the trial court's denial of their motion to dismiss based on immunity under Texas Civil Practice and Remedies Code section 101.106(f). This interlocutory appeal presents two central issues: (1) whether we have jurisdiction to consider this appeal; and (2) whether the appellants satisfied the requirements for dismissal under the statute. We hold that we have jurisdiction to consider this appeal, and we affirm the trial court's judgment.

**Factual Background**

The relevant facts are drawn from appellee Debbie Dafonte's petition. Phillips and Adegboyega are medical doctors who practice at The University of Texas Medical Branch at Galveston ("UTMB"). Dafonte was Phillips' patient. In October 2001, several years after Dafonte had been diagnosed with cancer in her left breast and undergone a mastectomy, Phillips performed reconstructive surgery on Dafonte's breast. During that surgery, a biopsy was taken of a nodule in Dafonte's right breast. Adegboyega prepared a pathology report of this biopsy that diagnosed Dafonte with ductal carcinoma in situ, an early form of breast cancer. According to Dafonte, neither Phillips nor Adegboyega informed her of this biopsy or its results.

Over the next several months, Dafonte continued to be treated by Phillips at UTMB. In April 2002, during a routine mammogram, three cysts were found in Dafonte's right breast; however, when she asked Phillips about them, Phillips did not disclose the earlier biopsy, but instead "reassured" Dafonte regarding the cysts.

The following month, another biopsy revealed Dafonte's cancer, which had now progressed to a point at which a modified radical mastectomy was recommended as the course of treatment. According to Dafonte, had the cancer been reported to her earlier, she could have chosen a less invasive treatment to remove it. Dafonte chose Phillips to perform the mastectomy and reconstructive surgery. Dafonte alleges that, had she been told the truth, she

would not have selected Phillips to perform the surgery.

After several follow-up surgeries were required, Dafonte requested her medical records. It was only then, in 2004, that she learned of the original cancer diagnosis.

In October 2004, Dafonte sued Phillips for breach of fiduciary duty, fraudulent concealment, and negligence. She also sued Adegboyega for negligence for failing to convey the results of the biopsy of her right breast. Dafonte *sought damages for* physical pain and mental anguish, lost earnings, disfigurement, medical expenses, loss of consortium, physical impairment, and attorney's fees.

Phillips and Adegboyega ("the doctors") moved to dismiss Phillips' lawsuit, asserting that dismissal was mandatory under Texas Civil Practice and Remedies Code section 101.106(f) of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE 101.106(f). Section 101.106 is a part of the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE §§ 101.001—.109 (the "Tort Claims Act"). Before Dafonte filed her lawsuit, section 101.106 was revised by the newly enacted House Bill 4, as part of the Legislature's tort reform efforts in 2003. Under section 101.106(f), a suit filed against an employee of a governmental unit based on conduct within the scope of employment, which could have been brought "under this chapter" against the governmental unit, shall be dismissed on the employee's motion unless the plaintiff dismisses the employee and names the governmental unit as the defendant. *See* TEX. CIV. PRAC. & REM.CODE § 101.106(f). The doctors contended that Dafonte alleged claims against them in their official capacity and within the scope of their employment, and supported their motion with affidavits in which they stated they were

salaried employees of UTMB and received their paychecks from the State of Texas.

On April 22, 2005, the trial court denied the doctors' motion. This interlocutory appeal followed.

## I. Dafonte's Challenge to Jurisdiction

Dafonte raises two problems she claims undermine our jurisdiction over this appeal. Because we must have jurisdiction over the doctors' appeal to address the substance of their issue, we begin with Dafonte's jurisdictional claims.

### A. This Court Has Jurisdiction Over This Appeal.

■ Dafonte asserts we lack jurisdiction over this appeal because: (1) section 101.106(f) is not an immunity statute that renders the defendants immune from further action, but is merely procedural in nature; and (2) the doctors filed the wrong type of pleading requesting their dismissal from the suit. We disagree on both counts.

#### 1. Section 101.106 is an Immunity Statute.

We first dispose of Dafonte's contention that section 101.106(f) is not an immunity statute and is therefore merely procedural rather than substantive. Section 101.106(f) provides as follows:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or

before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM.CODE § 101.106(f). Dafonte cites *Villasan v. O'Rourke,* relied upon by the doctors, as recognizing that the provisions of section 101.106 together create a "procedural right" that may be enforced by a motion to dismiss. *See* 166 S.W.3d 752, 758 (Tex.App.-Beaumont 2005, pet. filed).

We agree the statute confers procedural rights, but we do not agree that the statute is wholly procedural in nature. The procedural rights the legislature granted also have a substantive impact. In *Newman v. Obersteller,* the Texas Supreme Court considered an earlier version of section 101.106, which provided that a judgment in an action against a governmental unit "bars any action" against an employee. *See* 960 S.W.2d 621, 622 (Tex.1997).[1] That version was included in a subchapter entitled "Procedures," creating an initial impression that the statute was procedural in nature. *See id.* at 625 (Abbott, J., dissenting). The court of appeals below had interpreted the provision as a limitation and bar statute, rather than an immunity statute. *Id.* at 622. Yet, the Court held it was an immunity statute because it rendered the defendant immune from further action in the matter, even though it did not use the word "immunity." *Id.* The Court also noted that its reasoning was consistent with the purpose of the statutory provision allowing governmental employees an interlocutory appeal from an adverse ruling on a claim of immunity, which is to "protect[ ] public officials asserting an immunity defense from the litigation process." *Id.* Thus, the *Newman* court ultimately held that section 101.106 was an

immunity statute and the court of appeals erred by not exercising jurisdiction over the governmental employee's interlocutory appeal. *Id.* at 623.

Although the statutory language in *Newman* differs from that before us, we nonetheless find the Court's reasoning in *Newman* equally applicable here. Section 101.106(f) provides that, if a plaintiff's suit against an employee of a governmental unit meets certain requirements, it is "considered to be against the employee in the employee's official capacity only," and, if the plaintiff does not timely amend the suit to dismiss the employee and name the governmental entity, the suit must be dismissed on the employee's motion. *See* TEX. CIV. PRAC. & REM.CODE § 101.106(f). Effectively, this provision provides immunity to the employee of a governmental unit by requiring either the substitution of the governmental entity for the employee or the dismissal of a plaintiff's suit when the suit is based on conduct within the general scope of that employee's employment and could have been brought under the Tort Claims Act against the governmental unit. *See id.* Relying on the reasoning of *Newman,* we hold that when the statutory requirements of section 101.106(f) are met, the statute confers immunity on an employee of a governmental entity.

**2. The Denial of the Doctors' Motion to Dismiss Based on Immunity May Be Appealed Under Civil Practice and Remedies Code Section 51.014(a)(5).**

■ Having determined that section 101.106(f) is an immunity statute, we next consider Dafonte's contention that we lack jurisdiction because the doctors are appealing from the denial of a motion to

---

1. The earlier version the Texas Supreme Court considered provided as follows: "A judgment in an action or settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." *See Newman,* 960 S.W.2d at 622.

dismiss rather than from the denial of a motion for summary judgment. As we stated previously, section 51.014(a)(5) authorizes an appeal from an interlocutory order of a trial court[2] denying "*a motion for summary judgment* that is based on an assertion of immunity by an . . . employee of the State or a political subdivision of the State." TEX. CIV. PRAC. & REM.CODE § 51.014(a)(5) (emphasis added).

 We are mindful that we must strictly construe statutes allegedly authorizing interlocutory appeals, and we may not expand our jurisdiction beyond that conferred by the legislature. *See Xeller v. Locke*, 37 S.W.3d 95, 100 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). However, in our opinion, the legislature did not intend to limit the application of section 51.014(a)(5) to a specific procedural vehicle; rather, the legislature was most interested in the substance or topic of the motion—i.e., that it declare the employee's immunity because of his employment by the State and that it attack the court's jurisdiction to hear the case. Our conclusion is guided by the reasoning of the Texas Supreme Court in *Texas Department of Criminal Justice v. Simons*, 140 S.W.3d 338 (Tex.2004), and by section 101.106 of the Tort Claims Act.

First we turn to *Simons*. Although it involved section 51.014(a)(8) of the Civil Practice and Remedies Code, it is instructional because section 51.014(a)(8) substantively is quite similar to section 51.014(a)(5). Both sections provide for interlocutory appeals when claims of immunity have been denied; that is their primary purpose. Section 51.014(a)(8) provides interlocutory appeals to govern-mental entities, while section 51.014(a)(5) gives the employees of these governmental entities an interlocutory appeal. In addition, of the utmost importance to this appeal, both sections grant an interlocutory appeal when a party has asserted immunity via a specifically-mentioned procedural vehicle. In the case of section 51.014(a)(8), the procedural vehicle mentioned is a plea to the jurisdiction; section 51.014(a)(5) specifically mentions the filing of a motion for summary judgment.

One question answered by the *Simons* court is this: when the Legislature referred to a "plea to the jurisdiction" in section 51.014(a)(8) as the procedural vehicle by which immunity was raised, did it mean to preclude an interlocutory appeal if the governmental entity used a different procedural vehicle to raise immunity? The *Simons* court concluded that the Legislature did not intend for section 51.014(a)(8) to limit the benefits of an interlocutory appeal only to certain procedural vehicles. *Id.* at 349.[3] Instead, the Court held, the substance—or topic—of the pleading, not the title of the pleading, is what mattered to the Legislature. *Id.* Thus, if the governmental entity raised its immunity defense via a motion for summary judgment, rather than by a plea to the jurisdiction as specified in 51.014(a)(8), the governmental entity still would be entitled to an interlocutory appeal, because the substance of the motion claimed immunity. Likewise, the Court held, if the governmental entity filed a plea to the jurisdiction without raising a jurisdictional issue, the governmental entity would not be entitled to an interlocutory appeal merely because it filed a plea to the jurisdiction. *Id.* The *Simons* court there-

2. The statute specifically references a district court, county court at law, or county court.

3. Governmental entities typically file pleas to the jurisdiction to raise governmental immu-nity issues, so it was logical for the Legislature to refer specifically to a plea to the jurisdiction.

fore instructs that "[o]nly when the issue raised cannot implicate subject matter jurisdiction must the interlocutory appeal be dismissed." *Id.*

Turning to section 51.014(a)(5), *Simons* provides a clear answer. The directive is that substance, or the topic of the pleading, prevails over form, or the title of the pleading. Consequently, the significant fact for determining if Phillips and Adegboyega are entitled to an interlocutory appeal under section 51.014(a)(5) is that they alleged that they were immune as employees of the State. By claiming immunity, they entitled themselves to an interlocutory appeal. That they raised immunity via a motion to dismiss is inconsequential. Again, the substance, or the topic, of the pleading, prevails over form, or the title of the pleading.

Our interpretation also is consistent with Section 101.106 of the Tort Claims Act. Unquestionably, that section is designed so that governmental employees sued under the Tort Claims Act for actions taken within the scope of their job will be dismissed as quickly as possible. It would undermine the purposes of 101.106 if an employee used the "wrong" procedural vehicle to raise an immunity defense, and then had to wait to appeal the court's denial of the defense until after he had to undergo the ordeal and expense of trial. *See Newman,* 960 S.W.2d at 622.

In summary, we hold that the doctors are entitled to an interlocutory appeal and therefore that we have jurisdiction to consider this interlocutory appeal under Civil Practice and Remedies Code section 51.014(a)(5).[4] We next turn to the substance of the doctors' issue on appeal.

## II. The Doctors Failed to Show that Dafonte's Suit Could Have Been Brought Under the Tort Claims Act.

The doctors contend the trial court erred by denying their motion to dismiss because Dafonte essentially sued them in their official capacity and refused to amend her suit to name UTMB as the sole defendant as section 101.106(f) requires. Under section 101.106(f), "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." TEX. CIV. PRAC. & REM.CODE § 101.106(f). On the employee's motion, "the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed." *Id.* We hold that the doctors failed to demonstrate that Dafonte's suit could have been brought "under this chapter" against UTMB, the governmental unit employing them. Therefore, the doctors did not satisfy the statutory requirements and the trial court did not err in denying their motion to dismiss.

As seen above, to be entitled to dismissal under section 101.106(f), the doctors had to show that Dafonte's suit (1) was based on conduct within the general scope of the doctors' employment, and (2) could have been brought "under this chapter" against UTMB. *See id.* In the trial court, the doctors focused on the first prong—that the suit was based on conduct within the

---

4. Dafonte also complains about the doctors' motion because she had no opportunity to conduct discovery, and because the doctors set the hearing on the motion less than twenty-one days after filing it. In light of our ultimate holding in this case, this claim is moot and we do not address it.

general scope of their employment—by asserting that they were members of the medical staff at UTMB, they were salaried employees of UTMB, they received their paychecks from the State of Texas, and all of their involvement in Dafonte's medical care was within the scope of their employment with UTMB.

In response, Dafonte did not challenge the doctors' evidence, but instead asserted that they were not entitled to be dismissed because, for various reasons, Dafonte could not bring her claims against UTMB under the Tort Claims Act; in other words, the doctors did not show that her suit could have been brought "under this chapter" against UTMB. *See id.* For the reasons stated below, we agree with Dafonte.

■■ The Tort Claims Act expressly waives sovereign immunity in three general areas: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property, and (3) injury caused by a premise defect. *See* Tex. Civ. Prac. & Rem.Code §§ 101.021—.022(a); *County of Cameron v. Brown,* 80 S.W.3d 549, 554 (Tex.2002). In their appellate reply brief, the doctors acknowledge that the relevant provision to apply is the governmental unit's liability for injuries caused by a condition or use of tangible personal or real property. *See* Tex. Civ. Prac. & Rem.Code § 101.021(2). The doctors also acknowledge that Dafonte characterizes her claims as a failure to communicate a diagnosis contained in her medical records, and concede that information is not tangible property under section 101.012(2) of the Tort Claims Act. *See Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 179 (Tex.1994) (holding that information does not constitute tangible personal property under section 101.021(2) of Tort Claims Act and that governmental immunity was not waived for negligence involving the use, misuse, or nonuse of information in patient's medical records).

Nevertheless, the doctors contend that the trial court erred in determining that Dafonte alleged she was injured by the use or misuse of tangible property for two reasons: (1) her petition included an allegation that she required follow-up surgeries on the right breast as a result of additional negligence;[5] and, (2) she sued Adegboyega for preparing a report containing the diagnosis of ductal carcinoma in situ, which was allegedly delivered to Phillips. These allegations, the doctors urge, fall within the general scope of the doctors' employment and involve the use of property.

■■ However, as discussed above, it is not enough that a plaintiff's allegation may be within the general scope of the employee's employment; the claim must also be one that could have been brought under the Tort Claims Act against the governmental unit. *See* Tex. Civ. Prac. & Rem.Code § 101.106(f). The real sub-

---

**5.** The doctors specifically point to the following allegation in Dafonte's petition:

"Moreover, the surgery on the right breast required numerous follow-up operations which were the result of additional negligence. For example, Ms. Dafonte was required to seek medical attention after the reconstruction because, among other reasons, the implant was exposed."

The doctors do not explain, however, how this allegation alleges a use or condition of tangible property that caused Dafonte's injuries. *See Dallas County MHMR v. Bossley,* 968 S.W.2d 339, 343 (Tex.1998) (stating that, for immunity to be waived under section 101.1021(2), personal injury or death must be caused by the condition or use of property and property does not cause injury if it does no more than furnish the condition that makes the injury possible).

stance of Dafonte's petition against the doctors is their intentional or negligent failure to communicate a diagnosis to her. This is also true regarding Dafonte's claim against Adegboyega, which is not, as the doctors characterize it, a claim involving "the preparation of a report." In her petition, Dafonte alleged that Adegboyega breached a duty to her "by failing to convey the results of the biopsy of Plaintiff's right breast nodule to those responsible" for her care. Information about a medical condition is not considered tangible property. *See York*, 871 S.W.2d at 179 ("*Salcedo* [*v. El Paso Hosp. Dist.*, 659 S.W.2d 30 (Tex.1983) ] does not permit claims against the State for misuse of information."); *Univ. of Tex. Med. Branch at Galveston v. Mullins*, 57 S.W.3d 653, 657 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (holding that patient's claim that UTMB failed to inform her that she had tested positive for HIV was not actionable under the Tort Claims Act); *Sawyer v. Texas Dep't of Criminal Justice*, 983 S.W.2d 310, 312 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) ("[A] governmental unit does not waive its sovereign immunity by using or misusing information."); *Thomas v. Brown*, 927 S.W.2d 122, 128 (Tex.App.-Houston [14th Dist.] 1996, writ denied) ("It is well established that information and pronouncements, even when reduced to writing, are not tangible personal property for purposes of the [Tort Claims] Act.").

Moreover, intentional torts, such as breach of fiduciary duty, are not subject to the Tort Claims Act. *See* TEX. CIV. PRAC. & REM.CODE § 101.057(2) (providing that Tort Claims Act does not apply to a claim "arising out of assault, battery, false imprisonment, or any other intentional tort...."); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex.2001) (holding Tort Claims Act's waiver of sovereign immunity did not apply to plaintiff's allega-tions of intentional conduct by police officer); *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (holding that UTMB, as a state agency, could not be liable for the intentional torts of its employees); *Alvarado v. Heim*, No. Civ.A.SA–04–CA0363XR, 2004 WL 2101925,*3 (W.D.Tex. Sept.17, 2004) (holding police officer not entitled to dismissal of plaintiff's excessive force claims under section 101.106(f) because governmental unit is not liable for intentional torts under Tort Claims Act); *see also Moorhead v. East Chambers Indep. Sch. Dist.*, No. 01–03–01234–CV, 2004 WL 1470787, *4 n. 4 (Tex.App.-Houston [1st Dist.] July 1, 2004, pet. denied) (not designated for publication) ("Claims for breach of fiduciary duty do not fall under the Tort Claims Act."). Therefore, Dafonte's breach of fiduciary duty claim could not be brought against UTMB for the additional reason that UTMB would not be liable for such a claim under the Tort Claims Act.

We find that the doctors failed to establish that Dafonte's suit is one that could have been brought against UTMB; therefore, we hold the trial court did not err in denying the doctors' motion to dismiss.

**Conclusion**

In conclusion, we hold that we have jurisdiction under Texas Civil Practice and Remedies Code section 51.014(a)(5) to consider this interlocutory appeal of the trial court's denial of the doctors' motion to dismiss on the ground of immunity under Texas Civil Practice and Remedies Code section 101.106(f). We further hold that the trial court did not err in refusing to dismiss Dafonte's suit.

The trial court's judgment is affirmed.